**HMW INDUSTRIES, INC.,** Petitioner-Appellee

v.

**REUBEN B. WHEATLEY,** Commissioner of Finance, Government of the Virgin Islands, Respondent-Appellant

No. 74-1092

United States Court of Appeals

Third Circuit

Argued April 22, 1974

Filed September 25, 1974

GORDON S. GILMAN, ESQ., Assistant Attorney General, St. Thomas, V.I., *for appellant*

JAMES R. WIENER, ESQ. (DONOVAN, LEISURE, NEWTON & IRVINE), New York, N.Y., *for appellee*

Before ALDISERT, ADAMS and GARTH, *Circuit Judges*

OPINION OF THE COURT

GARTH, *Circuit Judge*

█ This appeal[1] involves the proper income tax treatment of non-taxable subsidies granted under Act 224 of the Virgin Islands Session Laws (1957). The question presented is whether such subsidies (non-taxable when paid) reduce the basis of property acquired with the subsidy payment, so that upon liquidation and distribution of that property (from subsidiary to parent), the reduced property basis results in increased income and hence additional taxes to the parent. The answer to this question depends upon whether the non-taxable subsidies are to be considered as "non-shareholder contributions to capital"

---

[1] The respondent, Commissioner of Finance, Government of the Virgin Islands ("Commissioner") appeals from a judgment entered December 13, 1973 which granted the motion for judgment on the pleadings brought by H.M.W. Industries, Inc. ("HMW") the taxpayer-petitioner. Our jurisdiction is invoked by 28 U.S.C. §§ 1291 and 1294(3).

309

subject to the provisions of § 362(c)(2)[2] of the Internal Revenue Code, or whether they retain their non-taxable character despite liquidation and distribution. The District Court held[3] that the subsidy payments made to Standard Time Corporation ("STC") did not constitute non-shareholder contributions to capital such as to require a reduction in asset basis. We agree.

The facts are undisputed. HMW, the taxpayer-petitioner, is a Pennsylvania corporation, formerly known as Hamilton Watch Co. Prior to August 4, 1969, all of the outstanding stock of STC, a Virgin Islands corporation engaged in the watch manufacturing business in St. Croix, was owned by petitioner. On August 4, 1969, STC was liquidated and its assets distributed to petitioner[4] in a transaction qualifying under § 332 of the Internal Revenue Code for non-recognition of gain or loss. Under § 334(b)(1) of the Code, petitioner's tax basis in the assets received from STC was the same as STC's tax basis in those assets prior to the liquidation. HMW filed a Virgin Islands income tax return for the period August 5, 1969 through

---

[2] 26 U.S.C. § 362(c)(2) provides:
    (c) Special rule for certain contributions to capital.

             *         *         *

    (2) Money.—Notwithstanding subsection (a)(2), if money—
(A) is received by a corporation, on or after June 22, 1954, as a contribution to capital, and (B) is not contributed by a shareholder as such, then the basis of any property acquired with such money during the 12-month period beginning on the day the contribution is received shall be reduced by the amount of such contribution. The excess (if any) of the amount of such contribution over the amount of the reduction under the preceding sentence shall be applied to the reduction (as of the last day of the period specified in the preceding sentence) of the basis of any other property held by the taxpayer. The particular properties to which the reductions required by this paragraph shall be allocated shall be determined under regulations prescribed by the Secretary or his delegate.

[3] 368 F.Supp. 915 (D.V.I. 1973).

[4] After the liquidation of STC, taxpayer HMW conducted the same business of manufacturing watches formerly carried on by STC at the same address formerly occupied by STC.

January 31, 1970, using STC's ending (or liquidation) inventory tax basis as its beginning inventory tax basis. Thereafter, respondent asserted a deficiency of $181,548.80 in petitioner's income taxes for fiscal 1970. The theory upon which the deficiency was assessed appears in the "Explanation of Items" section of the assessment as follows:

"Included in the cost of goods sold section was beginning inventory of $346,778.11. This was the same amount as the ending inventory on the subsidiary's [STC] return before liquidation. The question was raised as to whether the amount was correctly includable in cost of goods sold.

\*　　　\*　　　\*

Subsidy received or accrued during the period ending 8/4/69 was deemed to be in excess of $395,600.00. This is broken down into the following categories:

\*　　　\*　　　\*

\*　　　\*　　　\*

| Income Tax | 243,335.34 |
|---|---|

\*　　　\*　　　\*

Examination revealed that during a time period before liquidation, the only property acquired by Standard Time was inventory. Since the subsidy exceeded the inventory at the time of liquidation, the basis of the inventory in the hands of the subsidiary was zero. When the inventory was transferred to the division [HMW], the same basis should have been used, which had a zero basis. This adjustment resulted in a substantial increase in income."[5]

------

[5] It is asserted by HMW that the Commissioner has conceded that assuming (as the Commissioner does), that the subsidy payment constituted a non-shareholder contribution to STC's capital, it could only be applied in reduction of STC's August 4, 1969 tax basis in its raw materials and supplies of $270,093.27, rather than to the total of $346,798.17, which latter figure includes $76,704.90 representing work in process and finished products which involve labor and other expenses. Based on such a concession the tax liability for the fiscal year would approximate $140,000 rather than the deficiency assessment of $181,548.80. In light of our disposition, we need not and do not reach this issue.

The asserted deficiency is the result of the Commissioner's contention that the subsidies received by STC reduced STC's basis in its inventory, and consequently reduced HMW's carry-over inventory basis. This reduction in the basis of HMW's opening inventory had the effect of decreasing HMW's cost of goods sold, thereby increasing its taxable income for the fiscal year ended January 31, 1970. Thus, HMW is liable for the deficiency assessed only if the subsidies paid to STC are found to be non-shareholder contributions to capital.

## I.

Whether the subsidies paid here are non-shareholder contributions to capital as the Commissioner contends or a reduction in taxes without more, as is contended by the taxpayer, requires an examination of the history and purpose of the relevant tax laws. By the Naval Appropriation Act of July 12, 1921,

"the income tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in the Virgin Islands of the United States, except that the proceeds of such taxes shall be paid into the treasuries of said islands."[6]

This provision was incorporated into the Virgin Islands Code and is the basis of the Virgin Islands income tax law. Thus, 33 V.I.C. § 1931 (15) provides:

" 'Virgin Islands income tax law' means so much of the United States Internal Revenue Code as was made applicable in the Virgin Islands by the Act of Congress entitled 'An Act making appropriations for the naval service for the fiscal year ending June 30, 1922, and for other purposes,' approved July 12, 1921 (48 U.S.C. § 1397)."

---

[6] 48 U.S.C. § 1397.

As we recognized in Dudley v. Commissioner of Internal Revenue, 258 F.2d 182 (3d Cir. 1958), the purpose behind the enactment of the Naval Appropriation Act was to impose "upon the inhabitants of the Virgin Islands . . . a territorial income tax, payable directly into the Virgin Islands treasury, to assist the Islands in becoming self-supporting." 258 F.2d at 185. Thus, the effect of the above quoted provisions was to create a separate taxing structure for the Virgin Islands "mirroring" the provisions of the federal tax code except as to those provisions which are incompatible with such a separate tax structure. Dudley, supra; cf. Chicago Bridge and Iron Co. v. Wheatley, 430 F.2d 973 (3d Cir. 1970), cert. denied, 401 U.S. 910 (1971).

In 1957, Act No. 224, Virgin Islands Session Laws was enacted to encourage new business enterprises in the Virgin Islands. Its preamble stated:

"Whereas it is deemed to great benefit to the people of the Virgin Islands, as well as to the economy of the Virgin Islands, to establish as many self-sustaining enterprises in the Virgin Islands as is practical—to attract additional investment capital— to promote tourism—to promote the building of hotels, guest houses, and housing projects—to the end that the economic life of the Virgin Islands may be as diverse and stable as possible, and the people of the Virgin Islands trained and employed in investments, in finance, in modern techniques of production, mechanical skills, services and trades; and

Whereas it is deemed to be in the public interest to extend such inducements and render such aid as will encourage persons, firms and corporations to establish and develop new business enterprises; to make additional investment capital available to new and existing business; to promote tourism and the building of hotels, guest houses and housing projects."

Act No. 224's "Declaration of Policy" provided among other things:

"(d) To achieve this objective, exemptions from payment of certain taxes or fees and the granting of special subsidies shall be allowed to new business enterprises and to such other persons and corporations as hereinafter provided, and

(e) In order that the encouragement tendered by this Act in the form of subsidies for the promotion of the business and industrial development of the Islands may be an incentive, having a real and unmistakably sure basis, the Government of the Virgin Islands hereby declares that it considers all orders granting subsidies and tax exemptions made available under the provisions of this Act as being in the nature of a contract or agreement between the Government of the Virgin Islands and the persons or corporations receiving the benefit of the subsidies or tax exemptions, and that it will not adopt any legislation which may impair or limit such subsidies or tax exemptions granted hereunder or which may defeat the purpose of this Act."

To achieve the stated objectives and policy aims, the Act § (6(b)) among other things provided that each qualifying corporation "shall also be entitled to receive a non-taxable subsidy in an amount equal to Seventy-Five (75%) of the Income Tax paid into the Treasury of the Virgin Islands. . . ."

In 1960, Congress amended Title 26 to include Section 934.[7] It is apparent that Congress was concerned with the attempt by the Virgin Islands legislature to reduce the income tax liability of certain taxpayers "with respect to the tax attributable *both to income from sources within the Virgin Islands and from sources within the United States.*" (Emphasis added.) Both the Senate and House Reports indicate that Congress felt that Act No. 224 had achieved "substantially the same effect" as a "rebate" of income taxes but that the Act failed to limit the "rebate"

---

[7] S. Rep. No. 1767, 86th Cong. 2d Sess. (1960), included in 1960–2 Cum. Bull. 829; H.R. Rep. No. 1131, 86th Cong. 1st Sess. (1959) included in 1960–2 Cum. Bull. 811.

or reduction in tax to just Virgin Islands income. It, thus, enacted section 934 (a) which provides that:

"Tax liability incurred to the Virgin Islands pursuant to this subtitle . . . shall not be reduced or remitted in any way, directly or indirectly, whether by grant, subsidy, or other similar payment. . . ."

However, recognizing that the purpose of Act No. 224 was the economic development of the Virgin Islands, it did not find objectionable a properly limited reduction in income tax liability as an incentive for new businesses to locate there. Therefore, a number of exceptions to the general rule stated in section 934 (a) were provided.

One of these exceptions is section 934 (b) which provides:

(b) Exception for certain domestic and Virgin Islands corporations.—In the case of a domestic corporation or a Virgin Islands corporation, subsection (a) shall not apply (if the information required by subsection (d) is supplied) to the extent such corporation derived its income from sources without the United States if the conditions of both paragraph (1) and paragraph (2) are satisfied:

(1) Three-year period.—If 80 percent or more of the gross income of such corporation for the 3-year period immediately preceding the close of the taxable year (or for such part of such period immediately preceding the close of such taxable year as may be applicable) was derived from sources within the Virgin Islands; and

(2) Trade or business.—If 50 percent or more of the gross income of such corporation for such period or such part thereof was derived from the active conduct of a trade or business within the Virgin Islands.

For purposes of the preceding sentence, the gross income of a Virgin Islands corporation, and the sources from which the income of such corporation is derived, shall be determined as if such corporation were a domestic corporation. For the purposes of this subsection, all amounts received by such corporation within the United States, whether derived from sources within or without

315

the United States, shall be considered as being derived from sources within the United States.

A corporation satisfying these conditions would be eligible for subsidies limited to Virgin Islands income, if appropriate subsidy legislation was enacted.

Accepting the "invitation" extended by Section 934, the Virgin Islands legislature enacted the Industrial Incentive Program[8] which was substantially the same as Act No. 224, except that it contained the limitations required by Section 934(b). See 33 V.I.C. 4071(a)(2).

With this brief legislative history as a backdrop, we turn to the immediate issues before us.

## II.

STC, as a qualified corporation, had been granted Section 6(b) subsidies under Act No. 224 since the time such subsidies were authorized in 1959. The instant deficiency concerns only the last subsidy paid to STC prior to its liquidation.

Initially the Commissioner argues that the Virgin Islands legislature did not have the authority to enact a tax law (Act No. 224) which conflicted with or modified any provision of the Internal Revenue Code and that Act No. 224 was just such a law because it purported to reduce the income tax liability of certain taxpayers.

In our disposition of this case we need not reach the issues of whether the Virgin Islands legislature had the authority to adopt Act No. 224 and whether Act No. 224 conflicted with other provisions of Title 26 at the time it was enacted. It is clear that Congress has the power to ratify territorial legislation, even if that legislation was unauthorized when enacted. See Swayne & Hoyt Ltd. v.

---

[8] 33 V.I.C. §§ 4001–4116 (effective May 1, 1962), since repealed (July 17, 1972).

United States, 300 U.S. 297 (1937) ; Rafferty v. Smith Bell & Co., 257 U.S. 226 (1921) ; see also Ex Parte Endo, 323 U.S. 283, 303 n. 24 (1944).

■ Rationally encompassed within this broad power is the authority to ratify questionably valid enactments. In our view such ratification occurred when Congress enacted Section 934 of the Internal Revenue Code. The subsequent passage of the Industrial Incentive Program conforming with the mandate of Section 934, removed any question of the validity of the Virgin Islands tax subsidy program.[9]

## III.

What then is the effect of subsidy payments made under an appropriately authorized subsidy statute? The issue is whether the particular subsidies granted STC were non-taxable for all purposes, and did not reduce the basis of HMW's opening inventory.

The Commissioner argues that Act No. 224 exempted only those taxes which local (Virgin Islands) legislation had authority to impose, such as gross receipts and excise taxes. The Commissioner claims that the subsidy in question cannot be termed "non-taxable" because under Section 6(b) of the Act, the subsidy is equal in amount to only 75% of the income taxes paid, and is further restricted to income taxes generated from activities for which the Certificate of Tax Exemption was granted.[10] In addition, the Commissioner argues that the subsidies are paid as long as 18 months after the payment of the income tax

[9] We agree with the District Court that even though STC was originally granted its subsidy in 1959 *prior* to the passage of § 934 (effective on and after January 1, 1960), the relevant date is not the date of qualification but rather the date of payment. The subsidy in question here was paid to STC in October 1968 after the enactment of § 934 and the Industrial Incentive Program.

[10] In support of this contention the Commissioner asserts that in computing the subsidy, dividends on stock owned by the company, interest from loans not directly related to the business, certain capital gains and the like, are excluded.

on which they are based and no interest is paid on a subsidy. The Commissioner contrasts this with a refund of income tax which requires the payment of interest. In effect, the Commissioner takes the position that the statutes, relied on by the taxpayer as providing outright exemptions or reductions of tax liability, provide only for deferral or postponement of tax payment.

The taxpayer argues that the thrust of the legislation is to make the subsidies tax exempt for all purposes and at all times.[11] The taxpayer claims that a permanent tax reduction was contemplated by Act No. 224 and the Industrial Incentive Legislation. In support of its argument, HMW refers to the intent and content of the legislation; the internal consistency of the statutes; the legislative history underlying the enactment of § 934 of the Internal Revenue Code; and, a Revenue Ruling involving a similar subsidy.

As previously noted 33 V.I.C. § 4071 provides that a Certificate Holder (such as STC) under the Industrial Incentive Program is entitled to certain "subsidy" payments. One such subsidy is equal to 75% of the amount of Virgin Islands income taxes paid. 33 V.I.C. § 4071(a)(2). 75% of the income taxes paid by such a taxpayer are placed in a separate fund known as the "Industrial Incentive Fund" and it is out of this fund that "subsidy payments" are made. 33 V.I.C. § 4108(a) and (b). Significantly, § 4108 (b) refers to the subsidy payments as *tax refunds, e.g.* . . . "The proper officers are authorized, without further legis-

---

[11] The Commissioner's brief (pages 15–16), in discussing the validity of Act No. 224 (see our discussion under II supra), admits that:

"The clear intention of the legislation (and understanding by corporations induced to establish businesses in the Virgin Islands) was that this 'subsidy' was to be a reduction of income taxes. Although this intention would be frustrated by a ruling that the payments constituted non-shareholder contributions to capital, reducing the basis of the grantees' assets and in many cases causing an immediate increase in taxable income in the amount of the subsidy, it is irrelevant since the Virgin Islands Legislature cannot pass laws which will be in conflict with the intent of the Internal Revenue Code."

lation, to make *refunds of such taxes* authorized under the provisions of this subtitle from money in such special account." (Emphasis supplied.)

§ 4071(a)(2) of Title 33, among other things, provides that in the case of a subchapter S corporation, (the income of which is taxed directly to its stockholders rather than at the corporate level), the stockholders rather than the corporation are entitled to receive the subsidy. HMW argues persuasively that a subsidy paid to stockholders can hardly be characterized as a contribution to corporate capital but rather must be regarded as a tax refund. Hence, HMW contends, the entire pattern of the Industrial Incentive Program requires that subsidies be treated as tax refunds and not as contributions to capital.

In our view, the legislative history underlying the enactment of § 934 of the Internal Revenue Code demonstrates the intent of Congress to provide for income tax *exemptions* as distinct from income tax *deferral* or *postponement*.[12] Reference is made to the Senate Finance Committee Report which recognized that subsidies, such as STC's, were "substantially the same" as a rebate of income taxes. The Report states:

"Although the Revised Organic Act provided the Virgin Islands no authority to rebate income taxes paid to it . . . nevertheless the [Virgin Islands] legislature achieved substantially the same effect in Act No. 224 by providing subsidies ranging from 50 to 75 percent of the income taxes paid by corporations and residents with respect to certain specified types of new investment. . . .

\*          \*          \*

"For these reasons both the House and your committee in the first section of this bill, with two specified exceptions noted below, deny the right to the Virgin Islands to make any grant, subsidy, or other payment which has the effect either directly or indirectly

---

[12] S. Rep. to P.L. 86–779, 86th Cong., 2d Sess. (1960), 1960–2 Cum. Bull. 829. H.R. Conf. Rep. No. 2214, 86th Cong., 2d Sess. (1960), 1960–2 Cum. Bull. 859.

of reducing tax liability incurred to the Virgin Islands. . . ." S. Rep. No. 1767, 86th Cong., 2d Sess. 3–4 (1960), 1960–2 Cum. Bull. 829, 830–31. See also H.R. Rep. No. 1131, 86th Cong., 1st Sess. 4–5 (1959), 1960–2 Cum. Bull. 811, 813–14.

Similarly, the Conference Committee Report states:

"The first exception [Section 934(b), the requirements of which were satisfied by STC] relates to United States and Virgin Islands corporations and, in general, provides that subsidies can be paid to these corporations under much the same conditions as those under which income *tax exemptions* are presently available in the case of U.S. corporations carrying on a trade or business in most other U.S. possessions (sec. 931 of the code)." H.R. Conf. Ref. No. 2214, 86th Cong., 2d Sess. 5 (1960), 1960–2 Cum. Bull. 859, 862 (emphasis added).[13]

Our attention has also been called to Revenue Ruling 69-433, 1969–2 Cum. Bull. 153[14] holding that subsidies received under the Virgin Islands Industrial Incentive Program are considered to be a reduction in the amount of taxes paid to the Virgin Islands for purposes of the indirect foreign tax credit provisions of Internal Revenue Code § 902. It is argued by HMW that inasmuch as the cited ruling is the official interpretation of the United States Internal Revenue Service, it should control the Commissioner's construction of the Code as made applicable to

---

[13] Non-taxable subsidies are not unknown. In Edwards v. Cuba Railroad, 268 U.S. 628 (1924), the Supreme Court held that the subsidies paid by the Cuban Government to the Cuba Railroad, a New Jersey corporation, were non-taxable and were not income.

[14] Rev. Rul. 69-433 provides:

"A United States corporation has a Virgin Islands subsidiary that satisfies the requirements of Virgin Islands law and the conditions set forth in section 934 of the Internal Revenue Code of 1954. Therefore, the Virgin Islands subsidiary has received, under the Virgin Islands Industrial Incentive Program, a nontaxable subsidy equal to 75 percent of the income tax liability paid to the Virgin Islands during the taxable year.

*Held*, in computing the accumulated profits of the Virgin Islands subsidiary for purposes of section 902(a)(2) of the Code, the amount of the subsidy is not an item of gains, profits, or income but is considered merely a reduction in the amount of the taxes paid to the Virgin Islands. *Held further*, for purposes of section 902(a)(2) of the Code, the income tax paid by such subsidiary to the Virgin Islands is the amount of income tax paid to the Virgin Islands less the subsidy granted."

the Virgin Islands under 48 U.S.C. Sections 1397 and 1642.[15] The construction which taxpayer urges upon the Commissioner is that subsidies received under the Incentive Program constitute tax refunds and not contributions to capital.

Finally, HMW points to the closing agreement executed by STC and the Department of Finance of March 14, 1968. That agreement resolved the accumulated earnings tax liability of STC for its fiscal years ending 1964 through 1966. In paragraph 6(d) of that agreement, it is provided: "Surplus resulting from subsidy payments . . . will not be considered in determining whether or not its [STC's] earnings have been permitted to accumulate beyond the reasonable needs of its business." It is argued that this resolution implicitly recognizes that if subsidy payments could be considered for accumulation purposes, the effect would be to render the subsidies taxable, in contrast to the intent and terms of the closing agreement.

## IV.

We agree with the District Court that the subsidy legislation enacted by the Virgin Islands was designed to reduce the income tax liability of Certificate holders and reduce income taxes by refunding a portion of tax paid. See 33 V.I.C. §§ 4108(b), 4071(a)(2). Nothing appears in any of the legislative enactments to indicate that a deferment of tax liability was intended rather than an exemption from tax liability. We do not believe that Congress has provided otherwise. If a subsidy is treated as the Commissioner contends, (that is, as a non-shareholder contribution to capital which must be applied in reduction of

---

[15] Without regard to whether the cited Revenue Ruling should control the Commissioner's position here, logic would dictate that at the very least STC's subsidy payments should be treated in a manner analogous to the treatment of the foreign tax credit provisions of Rev. Rul. 69-433.

basis) the subsidy would in effect be rendered taxable, albeit at a later date. Yet, 33 V.I.C. § 4071 specifically states that all of the subsidies are to be non-taxable.

The District Court pointed out:

"The promise of tax reductions has been an important incentive for new businesses to locate in the Virgin Islands. In order to assure companies that this favorable treatment would not be subject to withdrawal at the whim of the legislature, it was provided that the arrangement was 'in the nature of a contract' between the government and the company. Act No. 224 § 1(e); 33 V.I.C. § 4001(b). Congress understood that the Virgin Islands had made these firm commitments (and would make others in the future) when it enacted Section 934(b). To deny taxpayers who were induced to establish new businesses in the Virgin Islands the benefits they reasonably anticipated receiving would do immeasurable harm to the economy of the territory and render uncertain indeed its prospects of attracting any additional investment. I feel that a holding that subsidies designed to refund income taxes are non-shareholder contributions to capital, often causing an immediate increase in taxable income in the amount of the subsidy, would constitute such a denial of promised benefits."

368 F.Supp. at 919–20. To hold the subsidies which were paid to STC taxable under 26 U.S.C. § 362(c)(2) would be contrary to both the letter and spirit of the Industrial Incentive Program Legislation and would frustrate the legislative intent so clearly expressed by the Virgin Islands Legislature commencing with Act No. 224. Such a holding would also deny taxpayers the benefits they reasonably anticipated receiving.[16] It is our view that § 934(b) was intended to ratify the subsidy payments made to qualified Virgin Islands taxpayers, and that these subsidies were of a non-taxable character rather than a non-shareholder contribution to capital.

[16] See Holmes v. Government of the Virgin Islands, 370 F.Supp. 715 (1974), for implicit support of HMW's contention that a taxpayer is properly entitled to rely on a statutory tax exemption grant.

## V.

Having concluded that we should not treat these subsidies as a postponement or a deferment of tax but rather as non-taxable, and recognizing that § 934(b) was in effect[17] at the time the subsidy in question was paid, we hold that the subsidy received by STC in the year prior to its liquidation was non-taxable, rather than a non-shareholder contribution to capital. Accordingly, the basis of STC's assets was not reduced in the amount of the subsidy and the District Court did not err in concluding that HMW could include as beginning inventory for the period in question STC's closing inventory without reducing that inventory by the amount of the subsidy. See Joseph Lupowitz Sons, Inc., et al. v. Commissioner of Internal Revenue, 497 F.2d 862 (3d Cir. 1974).

The judgment of the District Court will be affirmed.

---

[17] § 4(e)(1) of P.L. 86–779 Act of September 14, 1960 which contained § 934(b) provided that it would "apply to tax liability incurred with respect to taxable years beginning on or after January 1, 1960."