**Irving NITZBERG and Ida Nitzberg, and Sid Miller and Helen Miller, Appellees,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant.**

**No. 76–2124.**

United States Court of Appeals, Ninth Circuit.

Aug. 14, 1978.

Michael L. Paup, Atty. (argued), of Dept. of Justice, Washington, D.C., for appellant.

Lionel A. Rodgers, Jr. (argued), Hayward, Cal., for appellees.

Before SNEED and TANG, Circuit Judges, and SMITH,* District Judge.

RUSSELL E. SMITH, District Judge:

This appeal from the decisions of the Tax Court in consolidated cases poses the problem of whether certain losses incurred in connection with the operation of gaming tables are to be treated as "ordinary and necessary expenses," deductible under 26 U.S.C. § 162(a), or as "losses from wagering transactions," deductible only to the extent of gains, under 26 U.S.C. § 165(d).

The facts were stipulated, and from the stipulation it appears that appellants operated the Avalon Club (Club) which rented tables at which patrons for a fee could play lo-ball draw (a variation of poker) and pan (a variation of rummy), both gambling games. The operation was in all respects legal under local laws. All of the Club

---

* The Honorable Russell E. Smith, Chief Judge of the United States District Court for the District of Montana, sitting by designation.

revenue came from table rentals and food sales. In order that there be games available to patrons, it was necessary in the business to employ shills who, when insufficient patrons were on hand, played in the card games. The shills played at the request of the Club and were given chips by the Club with which they gambled and out of which they paid table rentals. When a patron appeared wanting a place at the table, the shill was required to vacate his seat whether winning or losing. If a shill lost, the Club absorbed the loss; but if he won, he divided his earnings with the Club. This 50% retention of winnings constituted the shill's sole compensation. It was customary in the business of renting gambling tables to employ shills and to compensate them in the manner in which they were compensated by the Club in this case. In the tax years in question, the Club shills' losses were greater than 50% of their earnings, and the proprietors of the Club deducted the losses as "ordinary and necessary business expenses." [1]

■ Under the facts of this case, the payment of shills is an "ordinary and necessary" business expense and would be deductible, absent the wagering provisions of 26 U.S.C. § 165(d). But the losses generated here were "losses from wagering transactions." Each time the shill made a bet, he was wagering, and since he was using the Club's money under an agreement to pay the Club 50%, the Club was wagering. However the relationship of the shill to the Club may be characterized, the shill, in placing a bet, was acting for the Club. It is urged that, as to the Club, the transactions were not wagering transactions and that the Club, by reason of the odds, was sure to lose. In any one game the shill might win, and in any one night, totaling all wins and losses, the shill might win more than twice what he lost. The fact that at some time the odds involved in a game of chance are bound to assert themselves does not convert a wager into something else. A gambler playing roulette against the house has, by

virtue of the 0 and 00, 36 chances to win and 38 chances to lose and is bound to lose at some time in infinity, but he is nonetheless engaged in a "wagering transaction." The losses here are losses from "wagering transactions."

■ The losses here are described, therefore, under both sections of the code, and the question is—which section applies? 26 U.S.C. § 162(a) deals with a wide variety of businesses while 26 U.S.C. § 165(d) deals specifically with gambling losses. The general rule is that a specific statute controls a general one. *United States v. Bates*, 429 F.2d 557, 559 (9th Cir. 1970). This rule has been applied to the business expense—wagering loss problem. In *Skeeles v. United States*, 95 F.Supp. 242, 247, 118 Ct.Cl. 362, *cert. denied*, 341 U.S. 948, 71 S.Ct. 1014, 95 L.Ed. 1371 (1951), it was said:

> This is also the result reached by application of the customary rules of statutory construction. Section 23(e)(1) provides for business losses generally, but Section 23(h) provides for wagering losses specifically. In such cases the specific statutory provision limits the general. . . .

> Section 23(h), not Section 23(e), is the applicable statutory provision. The amounts claimed as deductions, being gambling losses in excess of gambling gains, were, therefore, properly disallowed. The petitions in both cases are dismissed.

*See also Gordon v. Commissioner*, 63 T.C. 51 (1974); and *Offutt v. Commissioner*, 16 T.C. 1214 (1951).

The decisions of the Tax Court are reversed.

SNEED, Circuit Judge (dissenting):

I respectfully dissent.

As the majority recognize, the limitations of 26 U.S.C. § 165(d) are applicable only if the losses are sustained on wagering transactions *engaged in by the Club*. The Tax

---

**1.** The amounts paid by the shills for table rental were accounted for in the stipulation.

Court held that the "shills were gambling on their own account, not on behalf of the club." Irving Nitzberg, 44 Tax Ct. Mem. Dec. ¶ 75,154 (1975). From this it followed, thought the Tax Court, that the losses were ordinary and necessary expenses of the Club and deductible under 26 U.S.C. § 162(a). Sharing the winnings with the shills was but a means of compensating the shills for their services.

This is not an unreasonable interpretation of the facts as stipulated. The Club's business was not gambling but rather the rental of seats at a table at which others, including in my opinion the shills, gambled. Its entire gross income consisted solely of rentals of seats other than a small amount derived from the sale of food and beverages. It no more gambled than does one who leases a building to an operator of a casino. The Club merely provided the surroundings, of which the shills were a part, in which others could gamble. The compensation paid shills is no more wagering losses than are seat rentals wagering gains.

The stipulated facts do not reveal whether the arrangement the Club had with its shills could be expected to produce over a taxable year anything other than "an expense." Perhaps the "cost" to the Club of the shills would always exceed the Club's "returns" from their gambling over such a period. The record simply does not permit us to say. In any event, I agree with the majority that resolution of that issue is not necessary to the disposition of this case. To invoke the restriction of 26 U.S.C. § 162(d) the Club must have incurred "losses from wagering transactions." The "costs" incurred by the shills are to the Club the costs of renting seats and any "net return" to the Club by the shills is simply additional seat rentals paid by them to the Club. No "losses from wagering transactions" were incurred by the Club.[1] No conflict between 26 U.S.C. § 162 and 165(d) exists; hence, we

are not forced to select one over the other. Only 26 U.S.C. § 162 applies.

I would affirm the Tax Court.

---

1. The shills gambled. Their gains with respect to them should be considered from wagering. There is no necessity that such winnings be

treated otherwise merely because the absorption of their losses by the Club constitutes an ordinary and necessary expense to the Club.