WILLIAM ELZA UMSTEAD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Umstead v. Commissioner
Docket No. 15862-81.
United States Tax Court
T.C. Memo 1982-573; 1982 Tax Ct. Memo LEXIS 166; 44 T.C.M. (CCH) 1294; T.C.M. (RIA) 82573; September 30, 1982. William Elza Umstead, pro se. Robert M. Hallmark, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined *167 a deficiency in petitioner's Federal income tax for the year 1979 in the amount of $295 and an addition to the tax under section 6653(a) [1] in the amount of $14.75. The issues are (1) whether petitioner, a non-professional gambler, is required to report his total gambling winnings as gross income and (2) whether petitioner is liable for the negligence addition. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner resided in Denver, Colorado, at the time his petition was filed in this Court. Petitioner timely filed his individual Federal income tax returns (Forms 1040) for 1978 [2] and 1979. *168 During both years petitioner was a carpenter by trade and was also a non-professional or recreational gambler. On his 1978 return petitioner reported gambling winnings of $33,475 on line 20 (other income) of his Form 1040 and deducted gambling losses of $33,475 as a miscellaneous itemized deduction on Schedule A of his return. During 1979 petitioner's gross winnings from gambling totalled $9,238, and his gross losses from gambling totalled $9,540. On his Form 1040 for 1979, petitioner reported total income and adjusted gross income of $9,034.22, which was just his wages as shown on his Forms W-2. Petitioner did not include his gambling winnings in his gross income and did not itemize deductions but instead used the tax tables which included the zero bracket amount of $2,300 for a single person and the personal exemption of $1,000. Petitioner also filed a Schedule D listing his gambling winnings and losses as short-term gains and losses, showing a net short-term capital loss of $301.80. Attached to the Schedule D were several pages listing some 248 Trifecta tickets, and a document labeled "PRELUDE TO SCHEDULE D." This document set out petitioner's complaints and arguments for *169 this treatment which he described as "somewhat unusual." The document concluded with the statement "Schedule D Form 1040 with addendums follows, have fun." This document was signed "Your UNincome taxpayer." On audit respondent increased petitioner's income by the amount of his gambling winnings, disallowed the $2,300 zero bracket amount, but allowed Schedule A itemized deductions of $10,118. The itemized deductions included gambling losses up to the amount of his gambling winnings ($9,238), taxes of $597, and net medical deductions (after the floor deductions) of $283. The taxes allowed included general sales taxes and gasoline taxes that were determined from the standard tax tables. OPINION Petitioner argues that gambling winnings are not "earnings," that he is being taxed on "non-existent income" as a result of rulings of the Internal Revenue Service, and that that makes him "one of the major 'UNincome taxpayers in America today'." Petitioner's confusing arguments generate more heat than light on the subject. The problem, however, seems to be that petitioner steadfastly rejects or ignores certain basic principles of the Federal income tax laws. Petitioner wishes to net *170 out his winnings and losses off his return, and on his tax return report in gross income only the amount of any net gambling winnings. He considers as "actual income" or "true income" only his W-2 wages and any net gambling winnings. Petitioner is in error. Section 61(a) defines gross income as "all income from whatever source derived," and that normally includes gambling winnings. Section 61(a); Commissioner v. Glenshaw Glass Co.,348 U.S. 426, 429-430 (1955); Winkler v. United States,230 F. 2d 766 (1st Cir. 1956); Johnston v. Commissioner,25 T.C. 106, 108 (1955). [3]
Next, section 62 defines adjusted gross income and allows expenses of a trade or business and certain employee business expenses to be deducted from gross income. These deductions are sometimes referred to as deductions "above the line," meaning simply that they are deducted from gross income to arrive at "adjusted gross income." In a proper case gamblers *171 who are engaged in a trade or business of gambling may be able to deduct their gambling losses above the line; indeed, some decisions are based on the proposition that such a professional gambler may net losses against winnings for purposes of determining what is includable in gross income. See Winkler v. United States,supra, and Green v. Commissioner,66 T.C. 538 (1976). That is not our case. As a recreational gambler, petitioner can only deduct his gambling losses (up to the amount of his winnings) "below the line" as an itemized miscellaneous deduction on Schedule A. Section 165(d); Sec. 1.165-10, Income Tax Regs.[4]
*172 Petitioner argues that such treatment is "very unjust because when LINE 31 [adjusted gross income] is inflated by non-existent (sic) earnings the taxpayer who itemizes loses medical and dental deductions they would otherwise be entitled [to]." It is true that in computing the net medical deduction, the expenditure for medicines is first reduced by a floor figure of one percent of adjusted gross income and other medical expenses are first reduced by a floor figure of three percent of adjusted gross income. This means that the higher the adjusted gross income figure, the higher these floor deductions will be and hence the lower the net medical expense deduction. On the other hand, the general sales tax deduction, when determined from the standard tax tables, increases as the adjusted gross income figure increases. However, petitioner did not itemize deductions on the 1979 return he filed, but took advantage of the zero bracket amount of $2,300. What petitioner is trying to do is to net his gambling winnings and losses off the return so that he can get the full deduction for his gambling losses and at the same time get the benefit of the full amount of the zero bracket figure. *173 This he cannot do. This is exactly what other nonprofessional gamblers have tried to do -- to deduct their losses above the line and still claim the standard deduction (now zero bracket amount). See cases cited in Footnote 3. We have ruled against those taxpayers and we must rule against petitioner in this case. Petitioner's other arguments are merely word games or semantic flourishes about an "UNincome Tax" or a "nonincome tax" and what he regards as his "true and actual income." [5]
*174 The next issue is whether petitioner's underpayment of tax was due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). Petitioner has the burden of proof to show that it was not, and he has not done so. Vaira v. Commissioner,444 F. 2d 770 (3d Cir. 1971), affg. on this issue 52 T.C. 986 (1969); Bixby v. Commissioner,58 T.C. 757 (1972). Petitioner had properly reported his gambling winnings and losses for 1978, but chose to do otherwise for 1979. Petitioner displayed an evident unwillingness to try to understand any explanation of the tax laws other than his own notions about an "UNincome tax" and his "actual income." The Court thinks this is a proper case for imposition of the negligence addition, and therefore sustains respondent's determination. Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in issue, unless otherwise noted.↩
2. The petition asserts an overpayment of taxes for the year 1978 in the amount of $250, but the statutory notice of deficiency in this case pertains only to the year 1979. This Court can consider such facts with relation to other years as may be necessary correctly to redetermine the amount of the deficiency for the year 1979, but the Court has no jurisdiction to determine whether or not the tax for any other year has been overpaid or underpaid. Section 6214(b).↩
3. See also Heidelberg v. Commissioner,T.C. Memo. 1977-133; Carter v. Commissioner,T.C. Memo. 1976-23; Haimowitz v. Commissioner,T.C. Memo. 1971-241↩.
4. See cases cited in footnote 3. Petitioner heatedly attacks unidentified Internal Revenue Service rulings as "arbitrary" and "absured" and questions the format of the Form 1040 itself, which he seems to regard as the source of his difficulties. However, it is really the basic provisions of the Internal Revenue Code, as enacted by the Congress and as construed by the courts, that petitioner challenges. As explained to petitioner at the trial, the sources of authoritative law in the tax field are the decided cases, the Internal Revenue Code itself and any pertinent regulations, not informal publications of the Internal Revenue Service and not the forms devised by the Service. Adler v. Commissioner,330 F. 2d 91, 93 (9th Cir. 1964); Zimmerman v. Commissioner,71 T.C. 367, 371 (1978), affd. 614 F. 2d 1294 (2d Cir. 1979); Green v. Commissioner,59 T.C. 456, 458 (1972); Aldridge v. Commissioner,51 T.C. 475, 482↩ (1968).
5. Using his 1978 return as an example, petitioner says that by reporting his gambling winnings in gross income and deducting the same amount of gambling losses on Schedule A, "my taxable income was $960.00 more then (sic) my actual income. It doesn't take a financial wizard to figure out that I paid taxes on non-exsistent (sic) income." Petitioner is confused and in error. The $960 he refers to is the difference between the $16,074 reported on line 34 of the Form 1040 and his wages of $15,114 [what he calls "actual income"] reported on line 8. However, the $16,074 on line 34 does not represent the amount of taxable income but merely tax table income for purposes of using the tax tables. The tax tables for 1978 already included the zero bracket amount for that year of $2,200, the personal exemption of $750, and the general tax credit that was in effect for that year. For that reason, itemized deductions on Schedule A were reduced on line 40 by the zero bracket amount and only the excess deductions were listed on line 33. However, the taxpayer got the benefit of the full amount of deductions, the personal exemption, and the general tax credit.↩