**William W. BOYD and Ruth G. Boyd, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV–LV–80–54, RDF.**

United States District Court, D. Nevada.

Feb. 29, 1984.

As Amended April 6, 1984.

---

Jerome Blut, and Wright, Shinehouse & Stewart by Monte N. Stewart, Las Vegas, Nev., for plaintiffs.

U.S. Atty. Lamond Mills by Barry Lieberman, Las Vegas, Nev., Micheal G. Lichtenberg, Trial Atty., Tax Division, U.S. Department of Justice, Washington, D.C., for defendant.

## OPINION

ROGER D. FOLEY, District Judge.

## I. INTRODUCTION

Plaintiff William W. Boyd is a professional gambler who ran the Poker Room at the Golden Nugget Casino in Las Vegas for years. As part of his duties under his contract with the casino, Boyd participated in poker games to stimulate play in the poker room. Because of Boyd's reputation as an expert and honest card player, his play brought in millions of dollars in revenue to the Golden Nugget during his tenure. As compensation Boyd received a portion of the "take-off" income which the casino charged players to participate in poker games. Boyd's cut of the take-off constituted the major source of his income for the years he worked at the Golden Nugget.

To perform his duties as cardroom manager, Boyd actually had to play in the games with his own money at stake. He did this in addition to tending to administrative duties such as hiring and firing, arranging schedules, and making reservations for customers. For these and other reasons Boyd sustained heavy gambling losses while managing the card room, and spent thousands of dollars in "expenses" such as tipping the casino personnel and making his contribution to the take-off when playing in poker games.

For tax purposes Boyd is trying to match up his losses and income, but the Internal Revenue Service will not willingly allow him to do it. Boyd is one of the unlucky few trapped in the interstices of the federal tax scheme created, in this instance, by a bias against gaming. *See, e.g., Gordon v. Commissioner,* 63 T.C. 51, 83 (1974); *Skeeles v. United States,* 95 F.Supp. 242, 243, 244, 118 Ct.Cl. 362 (1951). The government's position is that (1) Boyd's share of the casino's take-off is ordinary income and not gain from wagering transactions, and (2) Boyd's gambling losses are not deductible as ordinary and necessary business expenses, but are deductible only to the extent of his gambling winnings as provided in section 165(d) of the Internal Revenue Code.

## II. THE COMPLAINT

Boyd and his wife filed joint returns for 1973, 1974, and 1975, the years at issue in

this suit. The Commissioner disallowed the Boyds' deductions of gambling losses for those years and the Boyds (hereinafter "Boyd"), after paying the deficiency, are suing for a refund of the overpayments.

Boyd alleges that he incurred deductible losses or business expenses in the amounts of $94,200 in 1973, $40,000 in 1974, and $153,400 in 1975. In his complaint he prays for recovery from the government the following amounts, plus interest at the statutorily prescribed rate: $44,300 for 1973, $20,099 for 1974, and $74,427 for 1975.

In support of his claim Boyd makes two arguments. First, he contends that his share of the take-off income constitutes gains from wagering transactions within the meaning of section 165(d) of the Code which provides:

> Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions.

26 U.S.C. § 165(d) (1976). Since the take-off income is gain from wagering transactions, Boyd continues, the losses Boyd incurred are deductible against the gains.

Boyd's second argument is an alternative approach to the first one. It is that if his take-off income is not deemed to be gain from wagering transactions, then his card room losses likewise should not be deemed losses from wagering transactions, but ordinary and necessary business expenses within the meaning of section 162(a) of the Code which provides in part:

> There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business....

26 U.S.C. § 162(a) (Supp. V 1981).

Under either argument the result would be essentially the same: Boyd could deduct what he loses or expends from what he wins or earns and would pay taxes on his actual net income. This, he argues, is only fair and would put him on equal footing with other legitimate businessmen.

## III. ANALYSIS

As Boyd contends, it would be fair to treat him as other businessmen, allowing deductions for expenses and taxing him on net income. But nobody contends that tax laws are entirely fair, and it is not this court's responsibility to pass upon the fairness of the federal tax scheme's treatment of the gaming industry and its employees. The duty of this court is to interpret and work within the laws the Congress of the United States has enacted along with the accompanying regulations and relevant case law. Unfortunately for Boyd the law is against his position. This court cannot tread upon the legislature's province regardless of its view of the fairness or sensibility of the tax laws as applied in Boyd's case; only the Congress can change the law and if taxpayers want the laws changed they are well advised to contact their congressional representatives.

### A. *Boyd's Share of the Take-Off Income*

Boyd contends that his share of the take-off income is a gain from a wagering transaction. All players in a poker game pay a fee to the casino; that is the casino's sole income from poker since it does not have a stake in the outcome of the hands. The fee is derived in a number of ways including an hourly assessment to use the tables, a percentage of the pot, and a flat fee for each hand's pot. Because the casino's take-off is income to it from a poker game, Boyd contends that it is obviously a gain from a wagering transaction within the meaning of section 165(d). And since Boyd gets one-sixth, after expenses, of the take-off it follows that the money is a gain from a wagering transaction to him too.

Of course, in the everyday meaning of words Boyd's compensation is a gain which flows from wagering transactions. But, in the meaning of the tax laws, his compensation is ordinary income.

The word "income" has a broad meaning in income tax legislation. Its classic definition is still the all-inclusive one of "gain derived from capital, from labor, or

from both combined." *Eisner v. Macomber*, 1920, 252 U.S. 189, 207, 40 S.Ct. 189, 193, 64 L.Ed. 521, 9 A.L.R. 1570. It is "income as the word is known in the common speech of men". *United States v. Safety Car Heating & Lighting Co.*, 1936, 297 U.S. 88, 99, 56 S.Ct. 353, 358, 80 L.Ed. 500. And in applying these criteria, "the revenue laws of the United States are not over-squeamish". Sibley, C.J. in *Alexandria Gravel Co. v. Commissioner*, 5 Cir., 1938, 95 F.2d 615, 616.

Any monies which come to the taxpayer as the fruits of his labor are "income". *Roberts v. Commissioner*, 176 F.2d 221, 225 (9th Cir.1949). *See also, Bevers v. Commissioner*, 26 T.C. 1218 (1956) (casino dealers' tips are taxable as ordinary income).

As the government has pointed out, Boyd has no real risk with respect to his take-off income. Whether he wins or loses his poker hands, he gets his share of the casino's take-off. And even though that comes from gambling, accepting Boyd's reasoning would conceivably open a floodgate of casino employees and gamblers claiming that all or a portion of their income is not ordinary income. A dealer gets tips from patrons engaged in gaming as do floormen and cocktail waitresses. While these employees are a bit further removed from the gaming than is Boyd, it is all a matter of degree. It is well settled that employees' tips are taxable as ordinary income, 26 T.C. 1218, but under Boyd's proffered analysis they could be considered as gains from wagering transactions against which gambling losses could be deducted. That would be diametrically contrary to section 165(d) of the Code and the relevant case law.

Wagering income has traditionally received less beneficial treatment than other income. See sec. 165(d). In part this arises from Congress' legitimate concern that gambling gains frequently are not reported for income tax purposes unless a taxpayer desires to deduct his gambling losses. See H.Rept. No. 704, 73rd Cong., 2d Sess. (1934), 1939–1 C.B. (Part 2) 570.

*Gordon v. Commissioner*, 63 T.C. at 83.

This court cannot make the quantum leap Boyd is proposing. It is unquestionable that his share of the casino's take-off is ordinary income to him and should be taxed accordingly.

### B. *Boyd's Poker Losses*

Boyd's alternative argument is that if his income from the poker games is ordinary, so should his losses be ordinary and therefore deductible. Undoubtedly Boyd was required under his contract with the Golden Nugget to begin and sustain poker gains. And, because he had to leave games just when he was about to win, play a particular game of poker in which he could not utilize his expertise, and supervise the card room's day to day operations at the expense of his concentration, Boyd suffered losses he would not have otherwise sustained. Additionally, it appears that had Boyd not wagered his own money he would not have played his own aggressive style of play which attracted many players and thus would not have contributed to maintaining the high volume of poker room play and high take-off income. So, for the foregoing and other reasons it seems reasonable to conclude that, as Boyd contends, his losses at the poker tables were necessary, promotional and ordinary business expenses. We are not, however, concerned with words in their common meanings in this instance, but are faced with analyzing tax statutes and accompanying legislative history, cases, and regulations.

Under the relevant law, Boyd's losses from wagering on poker games are gambling losses, not ordinary business expenses deductible from his income. This court is guided by the court of appeals for the ninth circuit's decision in *Nitzberg v. Commissioner*, 580 F.2d 357 (9th Cir.1978). In *Nitzberg* the court was faced with a situation similar to Boyd's in that a gambling club in California sought to deduct losses it incurred through shills who played at card games to promote business. The

club paid the shills' losses and split their winnings. The court noted that absent the wagering provisions of 26 U.S.C. § 165(d) the payment of the shills' losses would be deductible ordinary and necessary business expenses under 26 U.S.C. § 162. *Id.* at 358. But, the court ruled that the specific gaming statute, section 165(d), controls the general business deduction statute, section 162(a), and that the payment of the shills' losses was not deductible against ordinary income. *Id., citing United States v. Bates,* 429 F.2d 557, 559 (9th Cir.1970), and *Skeeles v. United States,* 95 F.Supp. 242, 247, 118 Ct.Cl. 362, *cert. denied* 341 U.S. 948, 71 S.Ct. 1014, 95 L.Ed. 1371 (1951).

This court is instructed also by *Offutt v. Commissioner,* 16 T.C. 1214 (1951) in which the issue was "whether a distinction can validly be drawn as to the deductibility of gambling losses in excess of gambling gains between a taxpayer who makes gambling his regular business and one who undertakes it for profit, but only sporadically." *Id.* at 1215. The court ruled that there is no basis for the distinction. *Id.*

In light of the foregoing, the inexorable conclusion is that under the federal tax scheme, Boyd's losses are not business expenses and can be deducted only to the extent of his gambling winnings. Since his winnings for the years in question have already been netted out to ascertain the amounts Boyd is trying to deduct, he has already deducted his losses to the extent of his wagering gains and is therefore prohibited by section 165(d) from deducting any remaining losses against other income.

## C. *Boyd's Tipping and Take-Off Expenses*

Boyd also claims as deductible expenses his contributions to the pots of all poker hands in which he participated and his tipping the dealers, floormen, and waitresses. Boyd's theory that these expenditures are deductible is intriguing and a solid argument can be made on its behalf, but it must wait for another time to be pursued because plaintiff Boyd failed to follow the strict procedures involved in litigating a case such as this. In making a novel claim, or any claim for that matter, the plaintiff in a tax refund case must fully apprise the government as to what facts and legal arguments will be presented to the court. The pertinent regulation provides:

(b) *Grounds set forth in claim.* (1) No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period. The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. The statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury. A claim which does not comply with this paragraph will not be considered for any puprose as a claim for refund or credit.

26 CFR 301.6402–2(b)(1).

Defendant government counsel contends that it was surprised by Boyd's argument respecting tipping and take-off expenditures as deductible expenses since none of the pretrial papers even hinted that anything other than gambling losses were being sought to be deducted. Boyd argues that since he mentioned section 162 of the Code which contains the word "expenses" the government was sufficiently put on notice respecting his argument. This court agrees with the government that Boyd did not apprise the defendant of his arguments and theories as required by the above quoted regulation and cannot raise the argument for the first time at trial.

As the Court of Claims has stated:

It is well established that the requirement of detail in setting forth claims is mandatory and that it must be scrupulously observed.

*L.E. Myers Co. v. United States,* 673 F.2d 1366, 1367, 230 Ct.Cl. 142 (1982) *citing* 10 Mertens, *The Law of Federal Income Taxation* § 58.17 (1976 rev.ed. & supp.1981). While it would be fascinating to explore

Boyd's cogent argument as to the deductibility of tipping and take-off expenses in his situation, to do so would only produce dictum and would not change the inescapable conclusion that in this case Boyd must lose his suit for a refund.

## IV. ORDER

Plaintiff's complaint is dismissed with prejudice. Judgment for defendant shall be entered.