Gregory E. MILLER and
Doris D. Miller

v.

Leroy A. QUINN, Director of Internal
Revenue, Appellant.

No. 85–3353.

United States Court of Appeals,
Third Circuit.

Argued April 28, 1986.

Decided June 12, 1986.

Rehearing and Rehearing In Banc
Denied July 15, 1986.

---

Meno W. Piliaris (argued) Asst. Atty. Gen. (Tax), Dept. of Law, Government of the Virgin Islands, Christiansted, St. Croix, V.I., for appellant.

Gregory E. Miller (argued), Christiansted, St. Croix, V.I., for appellees.

Before HUNTER, WEIS, and MANSMANN, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

Leroy A. Quinn, the Director of the Virgin Islands Bureau of Internal Revenue ("Director"), appeals the district court's grant of a petition to redetermine a tax deficiency brought by joint filers Gregory E. Miller and Doris D. Miller. Subject matter jurisdiction before the District Court of the Virgin Islands was based on V.I.Code Ann. tit. 33, § 944(a) (1967). Appellate jurisdiction over the court's redetermination obtained by virtue of 28 U.S.C. § 1291 (1982).

This appeal presents the question whether Virgin Islands lottery dealers may deduct the cost of unsold lottery tickets as an "ordinary and necessary" business expense under § 162(a) of the Internal Revenue Code of 1954, 26 U.S.C. §§ 1–9602 (1982) ("Code" or "I.R.C."). We conclude that such losses may be deducted only under the gambling loss provision. 26 U.S.C. § 165(d), and consequently reverse.

### I.

Like many of its mainland counterparts, the Virgin Islands legislature created a government-managed lottery to increase the Territory's revenues. *See* V.I.Code Ann. tit. 32, §§ 241–261 (Supp.1985). All lottery winnings are tax free. *Id.* § 261. Unlike many mainland state lotteries, however, Virgin Islands lottery dealers do not purchase only those tickets that they sell. Instead, dealers purchase "sheets" of tickets at a twenty-percent discount from their retail price. If a dealer is unable to sell all his tickets prior to the drawing, he cannot return them. Under the lottery's rules, the dealer becomes the owner of all unsold tickets.

In late 1975, while he set up his legal practice after graduating from law school, Gregory Miller obtained a license as a Virgin Islands lottery dealer. His wife Doris assisted him in selling the tickets. On their tax returns for 1976 and 1977, the Millers deducted the cost of unsold tickets as an ordinary and necessary business expense incurred in Miller's lottery dealership. This figure amounted to slightly more than eight thousand dollars for the two years.

The Director disallowed the Millers' treatment of the unsold tickets, taking the position that they could be deducted only under the Code's less favorable gambling loss provision. The Director consequently sent the Millers a notice of deficiency for the claimed losses. The Millers then petitioned the district court for a redetermination of the deficiency pursuant to V.I.Code Ann. tit. 33, § 943(a) (1967).

The court granted the Millers' petition. The court observed that the lottery ticket distribution system created by the Virgin Islands legislature required dealers to re-

tain unsold tickets. From this finding, the court reasoned that unsold tickets were a foreseeable and necessary incident of his dealership. Therefore, the court held that the losses should be treated as ordinary and necessary business expenses under I.R.C. § 162(a) like Miller's other overhead costs in running the dealership.

## II.

Through the Naval Appropriation Act of July 12, 1921, Congress made the United States income tax laws applicable to the Virgin Islands.[1] All income taxes collected from Virgin Islands residents, and income taxes collected from United States citizens not residing in the Virgin Islands but earning income in the Islands, are paid into the Islands' treasury. *See* 48 U.S.C. §§ 1397, 1642 (1982); *Great Cruz Bay, Inc., St. John, Virgin Islands v. Wheatley,* 495 F.2d 301, 303 (3d Cir.1974). Because the Naval Appropriation Act establishes the Virgin Islands as a separate taxing jurisdiction, the administration of the Code requires the substitution of the term "Virgin Islands" for "United States" where appropriate. *See Chicago Bridge and Iron Company v. Wheatley,* 430 F.2d 973, 975–76 (3d Cir.1970), *cert. denied,* 401 U.S. 910,

91 S.Ct. 873, 27 L.Ed.2d 809 (1971). We have previously described the Virgin Islands income tax as a "mirror system" of the income tax structure in place on the mainland. *See Vitco, Inc. v. Government of the Virgin Islands,* 560 F.2d 180, 181–82 (3d Cir.1977), *cert. denied,* 435 U.S. 980, 98 S.Ct. 1630, 56 L.Ed.2d 72 (1978); *HMW Industries, Inc. v. Wheatley,* 504 F.2d 146, 150–51 (3d Cir.1974); *Dudley v. Commissioner of Internal Revenue,* 258 F.2d 182, 184–87 (3d Cir.1958). Although Congress has not authorized the Virgin Islands legislature to alter the Code substantively, it has recognized the legislature's power to reduce its residents' tax liabilities, subject to certain restrictions. *See HMW Industries, Inc.,* 504 F.2d at 151; *Chicago Bridge and Iron Company,* 430 F.2d at 975. *See also* 26 U.S.C. § 934 (1982).[2]

## III.

■ The mirror system implies that the Code's rules of construction apply with equal force in Virgin Islands income tax cases. We therefore start from the general proposition that "[t]he propriety of a deduction does not turn upon general equitable considerations ... [but] 'depends

1. Codified at 48 U.S.C. § 1397 (1982), the Act states:

   **§ 1397. Income tax laws of the United States in force; payment of proceeds; levy of surtax on all taxpayers**

   The income-tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in the Virgin Islands of the United States, except that the proceeds of such taxes shall be paid into the treasuries of said islands: *Provided further,* That, notwithstanding any other provision of law, the Legislature of the Virgin Islands is authorized to levy a surtax on all taxpayers in an amount not to exceed 10 per centum of their annual income tax obligation to the government of the Virgin Islands.

2. Congress passed this section in 1960 to limit the Virgin Islands' attempts to reduce the tax liability of certain taxpayers. With respect to individuals, 26 U.S.C. § 934 provides:

   **§ 934. Limitation on reduction in income tax liability incurred to the Virgin Islands**

   (a) **General rule.**—Tax liability incurred to the Virgin Islands pursuant to this subtitle, as made applicable in the Virgin Islands by the

Act entitled "An Act making appropriations for the naval service for the fiscal year ending June 30, 1922, and for other purposes," approved July 12, 1921 (48 U.S.C. 1397), or pursuant to section 28(a) of the Revised Organic Act of the Virgin Islands, approved July 22, 1954 (48 U.S.C. 1642), shall not be reduced or remitted in any way, directly or indirectly, whether by grant, subsidy, or other similar payment, by any law enacted in the Virgin Islands, except to the extent provided in subsection (b) or (c).

. . . .

(c) **Exception for certain residents of the Virgin Islands.**—Subsection (a) shall not apply in the case of an individual citizen of the United States who is a bona fide resident of the Virgin Islands during the entire taxable year ... to the extent his income is derived from sources within the Virgin Islands (except that subsection (a) shall apply in the case of amounts received for services performed as an employee of the United States or any agency thereof).

upon legislative grace; and only as there is a clear provision therefor can any particular deduction be allowed.'" *Commissioner v. National Alfalfa Dehydrating & Milling Co.,* 417 U.S. 134, 149, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717 (1974) (quoting *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348 (1934), and *Deputy v. Du Pont,* 308 U.S. 488, 493, 60 S.Ct. 363, 366, 84 L.Ed. 416 (1940)). *See Commissioner v. Sullivan,* 356 U.S. 27, 28, 78 S.Ct. 512, 513, 2 L.Ed.2d 559 (1958) ("Deductions are a matter of grace"). Courts also recognize the axiom that the more specific Code provision controls over a general one. *See HCSC–Laundry v. United States,* 450 U.S. 1, 6, 101 S.Ct. 836, 838, 67 L.Ed.2d 1 (1981) (per curiam); *Bulova Watch Co. v. United States,* 365 U.S. 753, 761, 81 S.Ct. 864, 869, 6 L.Ed.2d 72 (1961); *Nitzberg v. Commissioner,* 580 F.2d 357, 358 (9th Cir.1978).

Two code provisions might apply here. I.R.C. § 162 provides, in part:

§ 162. Trade or Business expenses

(a) *In general*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business

. . . .

This provision permits the taxpayer to deduct those current business expenses incurred in the production of income. *See, e.g., Commissioner v. Tellier,* 383 U.S. 687, 689–90, 86 S.Ct. 1118, 1119–20, 16 L.Ed.2d 185 (1966); *Welch v. Helvering,* 290 U.S. 111, 113–15, 54 S.Ct. 8, 8–9, 78 L.Ed. 212 (1933). The second provision, I.R.C. § 165, provides, in relevant part:

§ 165. Losses.

(a) *General Rule:*—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

. . . .

(d) *Wagering Losses:*—Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions.

This less favorable treatment of gambling losses stems, in part, from congressional concern that gambling gains are unreported unless the taxpayer plans to deduct his gambling losses. *See Boyd v. United States,* 588 F.Supp. 569, 572 (D.Nev.1984), *aff'd,* 762 F.2d 1369 (9th Cir.1985).

Clearly, if Miller were not a lottery dealer, but purchased the tickets as an ordinary participant in the drawing, he would have to deduct the cost of his tickets under I.R.C. § 165(d), and then only to the extent of his gambling gains. *See Umstead v. Commissioner,* 44 T.C.M. (CCH) 1294 (1982); *Offutt v. Commissioner,* 16 T.C. 1214 (1951). According to the district court, however, this provision is inapplicable for two reasons: (i) Miller did not voluntarily gamble, but the lottery distribution system forced him to retain his unsold tickets; and (ii) to the extent that Miller gambled by holding onto the tickets, this activity was incidental to his business as a lottery dealer.

The court's analysis is flawed on both grounds. Despite appellant's protests to the contrary, no reason exists why Miller could not have disposed of his tickets either by selling tickets at a discount or by donating them to a charity prior to the drawing.[3] Either course of action would entitle him to the § 162 treatment he desires. His affirmative conduct in holding onto the tickets, and continuing to purchase more tickets than he was able to sell, indicates his decision to take the risk that one of his

---

**3.** At oral argument, Miller contended that because Virgin Islands lottery tickets are sold during and even after a drawing, it would be impractical for a dealer to donate or otherwise dispose of unsold tickets before the drawing. This characteristic of the lottery does not alter the fact that the dealer is considered the owner of all unsold tickets in his possession at the time of the drawing. If a dealer wishes to avoid

I.R.C. § 165(d) treatment, a suitable solution would be to devise a method of assigning the unsold tickets to a third party at a designated time before the drawing without physically delivering the tickets to the third party. We believe that this solution would avoid the burdens to which appellant referred, while allowing a dealer the maximum amount of sales time prior to the drawing.

unsold tickets might be drawn. Having organized his dealership so that he retained the tickets, "he must accept the tax consequences of his choice, whether contemplated or not ... and may not enjoy the benefit of some other route he might have chosen to follow but did not." *National Alfalfa Dehydrating & Milling Co.*, 417 U.S. at 149, 94 S.Ct. at 2137 (citations omitted).

The district court relied on *Commissioner v. Sullivan* in reaching the conclusion that the cost of the tickets is a deductible business expense. We disagree with the court's interpretation of *Sullivan.* The *Sullivan* Court held that a bookmaker could deduct the cost of his wages to his employees and rent for the premises as I.R.C. § 162 expenses. It does not hold, or suggest, that the taxpayer could deduct his gambling losses, even those incidental to his business, as ordinary and necessary expenses. There is a clear difference between the costs associated with running a gambling enterprise and the expense incurred in activities that directly give rise to gambling income. *See Boyd v. United States,* 762 F.2d 1369 (9th Cir.1985) (professional gambler hired on a percentage commission to manage Casino's poker room and to increase participation in the games by playing could not deduct his own out-of-pocket poker losses as business expenses); *Nitzberg v. Commissioner,* 580 F.2d 357 (9th Cir.1978) (gambling club could not deduct as business expenses money wagered by players hired to stimulate interest in card games).

### IV.

We appreciate Miller's dilemma. Nevertheless, the Virgin Islands legislature designed its lottery system against the backdrop of § 165(d) and chose not to provide lottery dealers with a method to minimize their losses on unsold tickets. If the legislature is concerned with the effect of I.R.C. § 165(d) on the lottery's performance, it can easily remedy this problem either by changing the system to permit the return of unsold tickets or by reducing the tax liability of dealers in an appropriate manner, as it has done for lottery winners. Until the legislature makes such a choice, however, it remains the dealers' responsibility to structure their affairs in light of the Code.

For the reasons discussed, we will reverse the judgment of the district court and remand the matter to the district court with instructions to dismiss the petition.

WEIS, Circuit Judge, dissenting.

Appellate courts frequently encounter the argument that a party "cannot have it both ways." Whatever its legal force, that contention accurately describes the government's goal in this case.

The Government of the Virgin Islands has established a lottery to raise money, and it solicits dealers to sell tickets. As a proprietor, the Government has an obvious interest in selling as many tickets as possible to increase revenue and in keeping administrative expenses as low as possible.

Selling tickets by the sheet to dealers with no returns permitted is an efficient way of reducing overhead expenses. Allowing ticket sales even after the drawings have begun also increases the volume of sales. These procedures, not objectionable in themselves, become unfair under the interpretation of the tax law urged by the government.

Routinely, merchants may deduct the cost of goods that they buy for resale. But the dealer whom the government has solicited to act as sales agent for the lottery is treated as a gambler and denied the same treatment as the businessman who sells other commodities.

The district court properly relied on the obvious fact that the dealer is primarily a businessman and is treated as such by the government in his proprietary capacity. To the extent that the dealer retains unsold tickets, he becomes a compelled or involuntary gambler. No matter that this "gambler" had not the slightest desire to participate in the lottery but simply could not sell the tickets; the government in its taxing

capacity refuses to recognize that the tickets constitute stock-in-trade and therefore are necessary business expenses.

I realize that fairness alone does not justify overriding the terms of a tax statute. But even under the statutory language, the judgment of the district court was correct.

Section 165, on which the government relies, demonstrates an uneasy compromise between a moralistic attempt to discourage gambling and a highly pragmatic approach to taxing its proceeds. Thus, in the case of a gambler, whether professional or amateur, losses are deductible only from winnings. The authors of the Internal Revenue Code realized that the odds tipped in favor of losses outnumbering winnings. Consequently, the statutory scheme reveals a determination not to allow the inevitable net gambling loss to reduce ordinary income subject to tax.

The theory behind the Internal Revenue Code's treatment of gambling losses and income is inconsistent with Virgin Islands law, which provides that lottery winnings are not taxable in any event. 32 V.I.C. § 261. Because of this provision, a person who wins the Virgin Islands lottery may well have no source from which to deduct the cost of losing tickets.

Thus, it is illusory for the majority to suggest that under § 165(d) the dealer's losses in this case will simply receive "less favorable treatment" than under § 162. To the extent he confines his "gambling" to the forced participation in the lottery, the dealer will never benefit from any deduction for the cost of unsold tickets. By contrast, those who gamble by choice in a variety of forms may be able to deduct lottery losses from winnings at other gaming ventures.

The Supreme Court took a very realistic view of a professional gambler's operation in *Commissioner v. Sullivan*, 356 U.S. 27, 78 S.Ct. 512, 2 L.Ed.2d 559 (1958). In that case, the Court treated an illegal gambling enterprise as "a business for federal tax purposes." Hence, the gambler could deduct rent and wages as "ordinary and necessary expenses in the accepted meanings of the words." *Id.* at 29, 78 S.Ct. at 514.

The taxpayer in *Sullivan* gambled by choice and not by governmental edict, as is the case here. I agree with the district court that the lottery dealer is a gambler "only incidentally and because the government forces him into that role. He is first and foremost a businessman." Therefore, no reason exists for treating him less favorably than either *Sullivan* or the Code requires.

The government is at cross purposes with itself. The taxing authorities' position that is sustained today will discourage dealers from buying more tickets than they can surely sell. On reflection, it may be appreciated that selling the tickets at a discount as the drawing date approaches would be counterproductive to increasing sales. Thus, the net effect of the government's tax policy will dampen the enthusiasm of dealers to increase their sales efforts. Although the taxing arm prevails today, overall revenues may diminish unless the government reforms its policies.

I would affirm the judgment of the district court.