WILLIAM H. BATHALTER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bathalter v. Commissioner
Docket No. 26304-81.
United States Tax Court
T.C. Memo 1987-530; 1987 Tax Ct. Memo LEXIS 522; 54 T.C.M. (CCH) 902; T.C.M. (RIA) 87530; October 19, 1987. *522 Held: Petitioner, a full-time gambler for his own account, was in the trade or business of gambling. Petitioner's gambling expenses are not "itemized deductions"; petitioner is not liable for minimum tax. Commissioner v. Groetzinger,480 U.S.    , 107 S. Ct. 980 (1987). Robert E. Bathalter, for the petitioner. Eugene P. Bogner, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined a deficiency in individual income tax against petitioner for 1979 in the amount of $ 17,317.83. After concessions by both parties, [1] *523 the issue for decision is whether petitioner's gambling activities constitute a trade or business within the meaning of section 62(1). FINDINGS OF FACT Some of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference. When the petition was filed in the instant case, petitioner resided in Alexandria, Kentucky. Petitioner filed his 1979 income tax return on the cash basis. From 1962 to 1974, petitioner was employed by the Food and Drug Administration (hereinafter sometimes referred to as "FDA") as a chemist. During this time with the FDA, petitioner was a casual gambler on horse races, initially thoroughbreds, then shifting to harness races. In 1974 petitioner quit his FDA job in order to pursue a living as a full-time gambler on parimutuel harness horse races. Although petitioner knew that making a profit gambling on harness horse races was difficult, he believed that if he put the time and effort into researching harness horse races, he could make a profit. Since quitting his job with FDA, petitioner has had no profession or employment, nor has he sought any employment, other than gambling on *524 harness horse races. In 1979 petitioner attended harness horse races and placed numerous bets on races at betting windows at the race tracks where the races were held. During 1979, he generally went to race tracks 6 days a week. He spent about 250 days out of the year handicapping races and physically going to the race tracks and betting. For each day petitioner attended the races, he typically spent 5-6 hours before going to the track doing research on the horses scheduled to run, and at least 6 hours at the track betting on the horses. Petitioner usually arrived 1 hour before the first race and watched the warm-ups, noting on a card file any changes in the soundness of the horse as compared to his notes on that horse from a previous week and also noting any changes in equipment. Petitioner also maintained statistics on the horse races. Based on the foregoing information, petitioner picked the horses to bet on. Petitioner's income and expenses from gambling on harness horse races in 1979 is set forth in table 1. Table 1
Net winning bets
$ 90,926.00
Bets lost
$ 86,518.00
Programs
173.00
Gas
625.50
Miscellaneous
884.35
[2] *525 88,200.89
Net betting income
$  2,725.11
Petitioner had not income in 1979 other than his winnings from gambling on harness horse races. Petitioner gambled solely for his own account. He did not give tips to or place bets for others. He did not accept bets from others as a bookmaker. At the end of each race, petitioner recorded the amount bet and the amount received on his racing program. * * * Petitioner was in the trade or business of gambling on harness horse races in 1979. OPINION Respondent contends that petitioner's gambling activity did not constitute a trade or business and, therefore, petitioner's gambling losses and other expenses are deductible only as itemized deductions and not as deductions from gross income; this, respondent contends, results in a minimum tax being imposed under section 55. In making this contention, respondent asserts that the legislative intent under section 165(d) indicates that gambling losses can never be treated as trade or business expenses. Respondent further contends that in order to be engaged in a trade or business, a *526 taxpayer must, at a minimum, have held himself out to others as offering goods or services and petitioner failed to meet this minimum requirement. Petitioner contends that his gambling activities do constitute a trade or business and, therefore, maintains that his gambling losses and expenses are deductible from gross income and do not constitute an item of tax preference for purposes of the alternative minimum tax imposed by section 55. We agree with petitioner. Section 55[3] *527 *528 imposes a minimum tax on a tax base which includes "adjusted itemized deductions". Section 57(b)(1)[4] *529 includes "itemized deductions" in the category of adjusted itemized deductions. Section 63(f)[5] *530 excludes so-called "above-the-line" deductions from the category of itemized deductions. Section 62(1)[6] provides that, with exceptions not here relevant, trade or business expenses are above-the-line deductions. As a result, trade or business expenses are not includible in the adjusted itemized deductions portion of the section 55 minimum tax base. [7]
In Commissioner v. Groetzinger,480 U.S.    ,107 S.Ct. 980 (1987), *531 the Supreme Court, in determining whether a taxpayer's gambling activities constituted a trade or business, stated as follows (107 S. Ct. at 988): [W]e conclude that if one's gambling activity is pursued full time, in good faith, and with regularity, to the production of income for a livelihood, and is not a mere hobby, it is a trade or business within the meaning of the statutes with which we are concerned. * * * Groetzinger satisfied that test in 1978. Constant and large-scale effort on his part was made. Skill was required and was applied. He did what he did for a livelihood, though with a less than successful result. This was not a hobby or a passing fancy or an occasional bet for amusement. In Groetzinger, the taxpayer engaged full-time in parimutuel gambling during 1978. During this time, he had no other employment and gambled solely for his own account. He went to the race track 6 days a week, devoting 60 to 80 hours per week, and attended 326 separate racing performances. When not at the track, he spent a substantial amount of time studying racing forms, programs, and other material to determine what bets to place. In the instant case, petitioner's situation is indistinguishable *532 from the taxpayer's situation in Groetzinger. During 1979, petitioner was engaged full-time in parimutuel gambling on harness races. He gambled solely for his own account. He generally went to race tracks 6 days a week. He spent about 250 days out of the year handicapping races and physically going to the race tracks and betting. He typically spent 5-6 hours before the start of the races researching the horses and at least 6 hours at the tracks betting on the horses. We conclude that Commissioner v. Groetzinger, supra, is on all fours with the instant case and that petitioner's gambling activity constituted a trade or business under section 62(1). Respondent contends that (1) section 165(d)[8] "is the sole and exclusive section under which a taxpayer may claim a deduction for gambling losses" and (2) the legislative intent under section 165(d) is not to treat wagering losses as a trade or business expense. Respondent maintains that the Congress' intent not to treat wagering losses as a trade or business expenses is inferred from the fact that section 165(d) limits the deduction for gambling losses to the extent of gambling winnings, as contrasted to nongambling trade or business *533 losses which are deductible in full and the excess of which may be carried back or forward to offset income in other taxable years under section 172. Respondent misses the point of section 165(d). In the context of the instant case, petitioner's gambling expenses are deducted under the opening flush language of section 162(a), [9] because they are expenses of petitioner's trade or business. If petitioner had had a loss in his gambling business, rather than the $ 2,725.11 gain the parties stipulated to (see table 1, supra), then section 165(d) would have served to prevent petitioner from using that loss to offset other income. Since petitioner did not have a loss in his gambling business, section 165(d) does not operate at all in the instant case. Respondent cites to Nitzberg v. Commissioner,580 F.2d 357 (CA9 1978), *534 revg. a Memorandum Opinion of this Court. [10] In Nitzberg, the Court of Appeals held that the taxpayer's wagering losses were subject to the section 165(d) deduction limitation even though these losses were also trade or business expenses. That proposition is clear from the statute. (The major dispute in the case, occasioning the reversal, was whether the particular expenses were "losses from wagering transactions" of that taxpayer.) It is equally clear that that proposition does not affect the instant case because, in the instant case, petitioner's losses from wagering transactions were less than his gains from wagering transactions, and so both sides agree that petitioner's losses are fully deductible. Respondent also cites to Skeeles v. United States,118 Ct. Cl. 362, 95 F. Supp. 242 (1951). In Skeeles, the Court of Claims held that the taxpayer was not entitled to a net operating loss carryover on account of gambling losses, because the predecessor of section 165(d) limited the deduction otherwise allowable under the predecessors of sections 165(a) and 165(c). The holding of Skeeles v. United States, supra, also does not affect the instant case. As to *535 respondent's contention that section 165(d) evidences a legislative intent that wagering losses can never be treated as trade or business expenses, we make two responses. Firstly, we have found no such statement in the legislative history of section 165(d) or its predecessors, and respondent has pointed to no such statement. Secondly, in Commissioner v. Groetzinger, supra, the Supreme Court held that gambling can be a trade or business and, on the facts therein, Groetzinger's gambling was a trade or business for purposes of applying essentially the same statutes that apply in the instant case. [11] The Supreme Court's determination forecloses further debate on this point. Respondent further contends that in order to be in a trade or business, a taxpayer must at a minimum have held himself out to others as offering goods or services and that petitioner failed to meet this minimum requirement. The Supreme *536 Court has expressly rejected imposing a minimum requirement of holding oneself out as offering goods or services in order to be engaged in a trade or business. Commissioner v. Groetzinger,107 S. Ct. at 985-986. We hold for petitioner. In accordance with the parties' agreement (see n. 1, supra). Decision will be entered under Rule 155.
Footnotes
1. The parties have agreed as follows: (a) if respondent wins on the issue for decision, then petitioner has a deficiency of $ 1,437.04; (b) if petitioner wins on the issue for decision, then petitioner has not deficiency in chapter 1 tax, but there is a deficiency in self-employment taxes under chapter 2, in an amount to be determined under Rule 155. Unless indicated otherwise, all subtitle, chapter, part, and section references are to subtitles, chapters, parts, and sections of the Internal Revenue Code of 1954 as in effect for the year in issue. Unless indicated otherwise, all Rule references are to the Tax Court Rules of Practice & Procedure. ↩
2. So stipulated. The sum of the stipulated components is $ 88,200.85. We do not know if the error is in the parties' addition or in their transaction of one or more of the components. 3. Section 55 provides, in pertinent part, as follows:
SEC. 55. ALTERNATIVE MINIMUM TAX FOR TAXPAYERS OTHER THAN CORPORATIONS. (a) Alternative Minimum Tax Imposed. -- In the case of a taxpayer other than a corporation, if -- (1) an amount equal to the sum of -- (A) 10 percent of so much of the alternative minimum taxable income as exceeds $ 20,000 but does not exceed $ 60,000, plus (B) 20 percent of so much of the alternative minimum taxable income as exceeds $ 60,000 but does not exceed $ 100,000, plus (C) 25 percent of so much of the alternative minimum taxable income as exceeds $ 100,000, exceeds (2) the regular tax for the taxable year,
then there is imposed (in addition to all other taxes imposed by this title), a tax equal to the amount of such excess. (b) Definitions. -- For purposes of this section -- (1) Alternative minimum taxable income. -- The term "alternative minimum taxable income" means gross income -- (A) reduced by the sum of the deductions allowed for the taxable year, * * * (C) increased by an amount equal to the sum of the tax preference items for -- (i) adjusted itemized deductions (within the meaning of section 57(a)(1)), * * * For purposes of subparagraph (A) (and in determining the sum of itemized deductions for purposes of subparagraph (C)(i)), a deduction shall not be taken into account to the extent such deduction may be carried to another taxable year. (2) Regular tax. -- The term "regular tax" means the taxes imposed by this chapter for taxable year (computed without regard to this section * * *
[The subsequent retroactive amendments of this provision by subparagraphs (A) and (H)(i) of sec. 104(a)(4) of the Technical Corrections Act of 1979 (Pub. L. 96-222, 94 Stat. 194, 215, 217) and sec. 305(c) of the Technical Corrections Act of 1982 (Pub. L. 97-448, 96 Stat. 2365, 2399) are reflected in the above text. The subsequent revisions of this provision by sec. 201(a) of the Tax Equity and Fiscal Responsibility Act of 1982 (Pub. L. 97-248, 96 Stat. 324, 411), and by sec. 701(a) of the Tax Reform Act of 1986 (Pub. L. 99-514, 100 Stat. 2085, 2320), do not apply to the instant case.] ↩
4. Section 57 provides, in pertinent part, as follows:
SEC. 57. ITEMS OF TAX PREFERENCE. (a) In General. -- For purposes of this part [part VI], the items of tax preference are -- (1) Adjusted itemized deductions. -- In the case of an individual, an amount equal to the adjusted itemized deductions for the taxable year (as determined under subsection (b)). * * * (b) Adjusted Itemized Deductions. -- (1) In general. -- For purposes of paragraph (1) of subsection (a), the amount of the adjusted itemized deductions for any taxable year is the amount by which the sum of the itemized deductions (as defined in section 63(f)) other than -- * * * exceeds 60 percent of the taxpayer's adjusted gross income reduced by the items in subparagraphs (A) through (D) for the taxable year. * * *
[The subsequent amendments of these provisions by sec. 121(c)(1) of the Economic Recovery Tax Act of 1981 (Pub. L. 97-34, 95 Stat. 172, 197), and the repeal of the adjusted itemized deductions tax preference by secs. 201(b)(1)(A) and 204(b) of the Tax Equity Fiscal Responsibility Act of 1982 (Pub. L. 97-248, 96 Stat. 324, 416, 426) do not apply to the instant case. One effect of the 1982 Act's repeal of the adjusted itemized deductions tax preference is that gambling loss deductions no longer were includible in the base for the minimum tax, whether or not the taxpayer incurred those losses in a trade or business.] ↩
5. SEC. 63. TAXABLE INCOME DEFINED. * * * (f) Itemized Deductions. -- For purposes of this subtitle [subtitle A], the term "itemized deductions" means the deductions allowable by this chapter [chapter 1] other than -- (1) the deductions allowable in arriving at adjusted gross income, and (2) the deductions for personal exemptions provided by section 151. * * *
[The subsequent amendment of this provision by sec. 102(a) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2099, does not affect the instant case. Sec. 63(f) now appears as sec. 63(d)↩.] 6. Section 62 provides, in pertinent part, as follows:
SEC. 62. ADJUSTED GROSS INCOME DEFINED. For purposes of this subtitle [subtitle A], the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions: (1) Trade and business deductions. -- The deductions allowed by this chapter (other than by part VII of this subchapter) which are attributable to a trade or business carried on by the taxpayer, * * *
[The subsequent amendment of this provision by sec. 132(b)(2)(A) of the Tax Reform Act of 1986 (Pub. L. 99-514, 100 Stat. 2085, 2115), does not affect the instant case.] ↩
7. In the instant case, if petitioner's gambling expenses are not includible in adjusted itemized deductions, then they are completely out of the section 55↩ minimum tax base. 8. SEC. 165. LOSSES. * * * (d) Wagering Losses. -- Losses from wagering transactions shall be allowed only to the extent of gains from such transactions. ↩
9. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. -- There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * * ↩
10. T.C. Memo. 1975-228↩. 11. Although Commissioner v. Groetzinger,480 U.S.   , 107 S. Ct. 980 (1987), involved the add-on minimum tax of section 56, rather than the alternative minimum tax of section 55, both sections depend on the meaning of section 57(b)(1)(A) and, through that sections 63(f) and 62(1)↩.