PETE C. VALENTI and PEGGY R. VALENTI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Valenti v. Commissioner
Docket No. 12836-92
United States Tax Court
T.C. Memo 1994-483; 1994 Tax Ct. Memo LEXIS 491; 68 T.C.M. (CCH) 838; October 4, 1994, Filed *491 Decision will be entered for respondent. For petitioners: Paul R. Roper. For respondent: Guy H. Glaser. RAUM
RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined income tax deficiencies of $ 43,175 and $ 12,404 for petitioners' 1988 and 1989 taxable years. At issue is whether petitioners were entitled to deduct wagering losses in excess of wagering gains for each of those tax years, pursuant to section 162[1] or were instead prohibited from deducting such amounts by reason of section 165(d). The facts have been stipulated. All references to petitioner in the singular are to petitioner Pete C. Valenti. Petitioners are husband and wife. At the time they filed their petition, they resided in Arcadia, California.
The parties have stipulated that "In tax years 1988 and 1989, petitioner was engaged in the trade or business of wagering on horse races." For both years, petitioners included *492 as part of their joint Federal income tax return (Form 1040) an attached Schedule C (entitled "Profit or Loss From Business"), in which they reported petitioner's profit or loss from gambling activities, which consisted of wagering on horse races. The Schedule C for 1988 for wagering activities reported gross receipts of $ 151,644 and expenses of $ 305,862, resulting in a $ 154,198 net loss from wagering. The Schedule C for 1989 for wagering activities reported gross receipts of $ 120,640 and expenses of $ 164,940, resulting in a $ 44,300 net loss from wagering activities. Petitioners deducted the foregoing Schedule C net wagering losses in full against their other taxable income on their respective Forms 1040 for 1988 and 1989. In disallowing these deductions, the Commissioner's notice of deficiency stated "Your deduction for gambling losses cannot exceed the amount of your gambling winnings." [2] Petitioners maintain that, pursuant to section 162(a), the net wagering losses represented a deductible trade or business expense. On the other hand, the Commissioner argues that the deduction of net wagering losses was precluded by section 165(d), which specifically prohibits taxpayers *493 from deducting wagering losses, except to the extent of their wagering gains. Petitioners also contend that the wagering loss limitations in section 165(d) as applied to those engaged in the trade or business of gambling are unconstitutional as violative of equal protection. We hold against petitioners on both statutory and constitutional grounds. 1. Application of Section 165(d) to Net Wagering Losses Incurred as Part of a Trade or Business
Pursuant to section 162(a), taxpayers are generally permitted to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". In contrast, section 165(d) provides that "Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions." Since petitioner's horse wagering is both a "trade or business" and a "gambling" activity, both sections 162(a) and 165(d) must be considered together. *494 At issue is which of those provisions is controlling in determining the deductibility of net gambling losses -- that is, gambling losses in excess of gambling gains -- incurred by a taxpayer engaged in the trade or business of wagering on horses, or to put the matter differently, whether section 165(d) operates as a limitation on section 162(a). To resolve the apparent "conflict" between sections 162(a) and 165(d) in regard to wagering as a trade or business, courts have looked to the rule "that a specific statute controls over a general one". Bulova Watch Co. v. United States, 365 U.S. 753, 758 (1961); Nitzberg v. Commissioner, 580 F.2d 357, 358 (9th Cir. 1978); [3]United States v. Bates, 429 F.2d 557, 559 (9th Cir. 1970); Skeeles v. United States, 118 Ct. Cl. 362, 373, 95 F. Supp. 242, 247 (1951). And in all of the cited cases involving sections 162(a) and 165(d), the latter provision has been viewed as the more "specific statute". As explained in Nitzberg v. Commissioner, supra at 358: The losses here *495 are described * * * under both sections [i.e., sections 162(a) and 165(d)] of the code, and the question is -- which section applies? * * * section 162(a) deals with a wide variety of businesses while * * * section 165(d) deals specifically with gambling losses. * * *
Thus, it has been held both by this Court and various courts of appeals that wagering losses cannot be deducted, except to the extent of the taxpayer's gains from wagering activities, and it has been so held even where such activities were conducted as a trade or business as opposed to a hobby. Boyd v. United States, 762 F.2d 1369 (9th Cir. 1985); Estate of Todisco v. Commissioner, 757 F.2d 1, 6-7 (1st Cir. 1985), affg. T.C. Memo. 1983-247, but remanding for factual recomputation; Nitzberg v. Commissioner, supra; Skeeles v. United States, supra; Offutt v. Commissioner, 16 T.C. 1214 (1951); Kozma v. Commissioner, T.C. Memo. 1986-177; Ward v. Commissioner, T.C. Memo. 1986-237. *496 Petitioners attempt to overcome this well-established line of cases on a variety of theories. For example, petitioners argue that section 162(a) is the more specific statutory provision and section 165(d) the more general provision. Their theory is that section 165(d) applies to gambling losses generally, whereas section 162(a) applies more specifically to losses incurred from gambling as a business *497 activity. The argument, while admittedly creative, is without merit. Section 162(a) is not limited to gambling losses, but instead applies to all trade or business expenses, of which gambling is only one possible type. In sharp contrast, section 165(d) is, by its very terms, limited to losses from gambling transactions. Moreover, the provisions in section 165(d) first appeared in our revenue law as section 23(g) of the Revenue Act of 1934, ch. 277, tit. I, 48 Stat. 689. [4] At that time the familiar deduction now in section 162(a) for the "ordinary and necessary expenses * * * in carrying on any trade or business" then in section 23(a) of the Revenue Act of 1934, supra, merely carried over in identical language the same deduction that had already appeared in section 23(a) of the Revenue Acts of 1932 and 1928, as well as in section 214(a) of the Revenue Acts of 1926, 1924, 1921, and 1918.[5] Plainly, the enactment of section 23(g) of the Revenue Act of 1934, supra, was intended as a limitation upon the then long standing familiar deduction (now in section 162(a)) for "the ordinary and necessary expenses paid or incurred * * * in carrying on any trade or business". *498 To contend otherwise is to belabor a clearly erroneous point. Nevertheless, petitioners undertake to do so by reliance on the Supreme Court's opinion in Commissioner v. Groetzinger, 480 U.S. 23 (1987). Petitioners state their position as follows: Respondent seeks to extend the restrictions of section 165(d) to gambling activities undertaken as a trade or business. However, at the time of the enactment of section 165(d) *499 and its [statutory] predecessor, gambling had not been recognized as a trade or business. This recognition did not occur until the [U.S. Supreme Court's] decision in Commissioner of Internal Revenue v. Groetzinger, supra, in 1987. Thus, clearly at the time Congress enacted section 165(d) and its predecessor, it was looking only toward casual gambling activities as being within the ambit of that code section. [6] [Pet. Opening Brief at p. 4]
*500 Accordingly, petitioners reason, since petitioner's gambling activities were not of a merely casual nature but were instead conducted as a trade or business activity, first recognized as such in 1987 in Groetzinger, they were not limited by section 165(d) but were instead properly deductible in full as trade or business expenses under section 162(a). This argument is flawed for a number of reasons. First, it ignores the fact that long prior to Groetzinger, a considerable number of cases had recognized that individuals could be engaged in the trade or business of gambling. See, e.g., Boyd v. United States, supra; Nitzberg v. Commissioner, supra; Gajewski v. Commissioner, 84 T.C. 980 (1985); Ditunno v. Commissioner, 80 T.C. 362 (1983); Offutt v. Commissioner, supra.Second, petitioners' discussion of Groetzinger ignores the fact that Groetzinger did not at any point consider the interplay between sections 162(a) and 165(d) (or its statutory forerunners), because the restriction in section 165(d) was *501 not at issue in that case. The issue in Groetzinger was whether a full-time gambler, who made wagers solely on his own account, was engaged in a trade or business under section 162for purposes of treating his gambling losses as a tax preference item under the minimum tax scheme governed by sections 55 and 56. Petitioners have also relied on Bathalter v. Commissioner, T.C. Memo. 1987-530, 54 T.C.M. 902, a case which involved the same issue as Groetzinger, but which similarly does not support them. Indeed, a dictum in Balthalter ironically undermines petitioners' position: If petitioner had had a loss in his gambling business, rather than the $ 2,725.11 gain the parties stipulated to * * * then section 165(d) would have served to prevent petitioner from using that loss to offset other income. Since petitioner did not have a loss in his gambling business, section 165(d) does not operate at all in the instant case. [Bathalter v. Commissioner, supra at 905; emphasis added.]
We hold that petitioners' imaginative attempt to twist the plain meaning of the statutory provisions must fail. Section 165(d) *502 is controlling here. 2. Equal Protection Under the Law
Finally, petitioners argue that the Commissioner's disallowance of the deduction for petitioner's net wagering losses violates their constitutional right to equal protection under the law. Like petitioners' other arguments, their equal protection claim is without merit. Petitioners' contention is in essence that, by applying the wagering loss restrictions of section 165(d) to petitioners and others engaged in the trade or business of gambling, the Commissioner treats such taxpayers differently than other taxpayers engaged in different trades or businesses. On brief, petitioners state that "equal protection * * * requires that those who are similarly situated must be treated in the same manner and prevents classifications which do not afford equal treatment to those in the same circumstance." (Pet. Opening Brief at p. 8) We reject petitioners' attempt to strike down the statute on the equal protection ground. Although there is an equal protection clause in the Fourteenth Amendment as a limitation on the powers of the States, there is no comparable clause explicitly applicable to legislation enacted by the United States. *503 However, the due process clause of the Fifth Amendment has been construed as imposing an equal protection requirement in respect of classification to the extent that "discrimination [resulting from such classification] may be so unjustifiable as to be violative of due process." Bolling v. Sharpe, 347 U.S. 497, 499 (1954) (fn. ref. omitted). [7]
The wide scope of powers of the legislature *504 under the Fourteenth Amendment in the matter of classification was discussed at length by the Supreme Court in Carmichael v. Southern Coal Co., 301 U.S. 495, 509-510 (1937): It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation. * * * This Court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitation. * * * Like considerations govern exemptions from the operation of a tax imposed on the members of a class. A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it. * * * [Citations omitted; emphasis supplied.]
And as to the matter of classification by Congress, Steward Machine Co. v. Davis, 301 U.S. 548 (1937), *505 is particularly significant. There, the Supreme Court responded to a challenge to a Federal tax upon employers, where it was argued, among other grounds, that the statute was invalid because it didn't apply to employers of less than eight, to agricultural labor, to domestic service in a private home, as well as to various other classes. In holding the tax valid the Supreme Court stated at 584: The Fifth Amendment unlike the Fourteenth has no equal protection clause. * * * But even the states, though subject to such a clause, are not confined to a formula of rigid uniformity in framing measures of taxation. * * * They may tax some kinds of property at one rate, and others at another, and exempt others altogether. * * * They may lay an excise on the operations of a particular kind of business, and exempt some other kind of business closely akin thereto. * * * If this latitude of judgment is lawful for the states, it is lawful, a fortiori, in legislation by the Congress, which is subject to restraints less narrow and confining. * * * [Citations omitted; emphasis added.]
There is certainly ample basis for singling out gambling for treatment different from that available *506 to other trades or business. The history of gambling was discussed at length in Skeeles v. United States, 118 Ct. Cl. 362, 365-368, 95 F. Supp. 242, 242-244 (1951), tracing it back millennia, as far back as the Talmud, which, the Court noted, "classes gambling winnings with thievery." The Court of Claims also recounted moral opposition to gambling by churches generally, and discussed anti-gambling legislation over the years. Further, we take judicial notice of the fact that although gambling has many defenders and sponsors, there is also widespread public opposition to professional gambling, and that there is at least some public perception that organized crime has infiltrated the business world of gambling. Plainly, a classification that differentiates the business of gambling from other business has "a rational basis, and when subjected to judicial scrutiny * * * [it] must be presumed to rest on that basis if there is any conceivable state of facts which would support it." Carmichael v. Southern Coal Co., supra at 509. The argument that section 165(d) violates equal protection as applied to those *507 engaged in the trade or business of gambling borders on the frivolous. We reject it without further discussion. Decision will be entered for respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue.↩
2. The terms "wagering" and "gambling" are hereinafter used interchangeably. ↩
3. Although the Ninth Circuit's opinion involved a reversal of a Memorandum Opinion of this Court, the reversal has been explained as being occasioned by the major dispute there as to "whether the particular expenses were 'losses from wagering transactions' of that taxpayer." See Bathalter v. Commissioner, T.C. Memo. 1987-530, 54 T.C.M. 902, 905. Also, the opinion of the Court of Appeals has since been accepted in this Court as setting forth a correct analysis of the statutory provisions involved. Kozma v. Commissioner, T.C. Memo. 1986-177↩. 4. The provisions were redesignated section 23(h) in the Revenue Act of 1938, ch. 298, 52 Stat. 447, 461, and continued as such in the 1939 Code until they became the current section 165(d)↩ as enacted in the 1954 Code.
5. Revenue Act of 1932, ch. 209, tit. I, 47 Stat. 169, 179 Revenue Act of 1928, ch. 852, tit. I, 45 Stat. 791, 799 Revenue Act of 1926, ch. 27, tit. II, 44 Stat. 9, 26 Revenue Act of 1924, ch. 234, tit. II, 43 Stat. 253, 269 Revenue Act of 1921, ch. 136, tit. II, 42 Stat. 227, 239 Revenue Act of 1918, ch. 18, tit. II, 40 Stat. 1057, 1066↩
6. It is quite true that the provisions of section 165(d) when originally enacted as section 23(g) of the Revenue Act of 1934, ch. 277, tit. I, 48 Stat. 689, were intended to eliminate the distinction between those losses incurred in illegal and those in legal gambling and to clear up much of the confusion then existing in respect of losses of casual gamblers as well as of those who gambled extensively and claimed unsuccessfully that they were in a trade or business. See Skeeles v. United States, 118 Ct. Cl. 362, 369-373, 95 F. Supp. 242, 244-247 (1951). However, the fact remains that these new provisions did operate as a limitation upon deductions claimed as trade or business deductions now provided for in section 162(a)↩.
7. In Brushaber v. Union Pac. R.R., 240 U.S. 1 (1916), the Supreme Court dealt with a broad attack upon the constitutionality of the 1913 income tax statute enacted after the adoption of the Sixteenth Amendment. Included in the attack was the contention that the statute unconstitutionally discriminated in a considerable number of situations between various classes of taxpayers. Although the Court did not use the words "equal protection", it nevertheless held constitutionally valid the wide variety of differences challenged. Id.↩ at 21-25.